UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RONALD WAYNE KOLANOWSKI,

        Plaintiff,                Case No. 1:08-cv-1010

v.                                   Honorable Robert J. Jonker

ROBERT LANCASTER et al.,

        Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.  Factual allegations

Plaintiff Ronald Wayne Kolanowski presently is jailed at the Manistee County Jail (MCJ). He sues Manistee County and its mayor and commissioners, 85th District Court Judge Brent Danielson, Manistee County Prosecuting Attorney Ford Stone and the following MCJ employees: Captain Robert Lancaster, Sergeant Cassandra Campbell, and Corrections Officers Fred Gannon, James Johnson and Ella McCullom.

Plaintiff, who is indigent, complains that on September 26, 2008 he asked Defendant Campbell for a legal envelope and postage to be charged to his jail account so that he could mail an undescribed lawsuit (the initial lawsuit). Campbell denied the request, telling Plaintiff that she was not required to accommodate his request, and she advised Plaintiff to have someone pick up his pleading at the jail and mail it for him. Plaintiff claims that, when he shared an astonished look with another inmate, Campbell made a "retaliatory slur" by saying, "Do you two have one mind? You keep looking at each other." (Compl. at 3, docket #1.)

After being denied by Campbell, Plaintiff asked Defendant Gannon to make seven copies of page 3-B of the initial lawsuit. Defendant Gannon advised Plaintiff that he would have to ask his supervisor, Defendant Campbell. Gannon later told Plaintiff that he had talked to Campbell and had suggested to her that he provide Plaintiff with paper to copy page 3-B by hand. Defendant Campbell told Gannon not to give Plaintiff anything and that she would speak with Plaintiff in the morning. Campbell never spoke with Plaintiff. Plaintiff alleges that Campbell's actions were retaliatory, though he does not indicate the reason for the alleged retaliation.

On September 28, 2008, Plaintiff asked Defendant James Johnson for copies of the same pages. Johnson told Plaintiff that he could not be given any copies until the jail heard from the Michigan Department of Corrections. Plaintiff filed a grievance about the denial of copies. Campbell responded to the grievance, saying that the prison was "'not' required to supply copies to an 'indigent inmate' on a daily basis." (Compl. at 3-A, docket #1.) Plaintiff alleges that the only other time he received copies was on September 25, 2008, three days before the request in question. Plaintiff claims that Campbell's actions were retaliatory, denied him access to the courts, and denied him his rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff further alleges that he did not receive a response to his grievance until October 10, 2008.

On October 1, 2008, Plaintiff asked Defendant Ella McCollum for blank paper to make copies of legal material. Defendant McCollum allegedly denied his request and asked if he had received his indigent store order on September 29, 2008 that included four sheets of paper. Plaintiff told her that he had used all of his paper and asked if he could get copies. She denied his request unless he had money in his jail account to pay for them.

Plaintiff alleges that, on October 15, 2008, Defendant Judge Brent Danielson denied an unspecified motion filed by Plaintiff in the 85th District Court on the grounds that the court did not have the power to grant the relief requested by Plaintiff. Defendant Prosecutor Ford Stone allegedly argued at the hearing that "it wasn't violating constitutional rights and that it was a matter of the amount of copies being requested." (Compl. at 3-B, docket #1.) Plaintiff complains that he could not get even one copy of his motion made for the prosecutor and had to rely on the district court to provide him with a copy in the proof of service.

In sum, Plaintiff claims that he was in the process of filing a lawsuit in this Court on September 25, 2008 but has been denied the necessary photocopies, legal postage and paper to provide the requisite number of copies for service upon the defendants. Plaintiff seeks injunctive relief to increase the amount of legal supplies made available to him, together with punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombley*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Immunity

Defendants Judge Brent Danielson and Prosecutor Ford Stone are entitled to immunity from suit. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself"); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11. Second, a judge is not immune for actions, though judicial in nature, which are taken in complete absence of all jurisdiction. *Id.* at 12.

Plaintiff's allegations clearly fail to implicate either of the exceptions to judicial immunity. There is no doubt that in ruling on a motion filed by Plaintiff, Judge Danielson was engaging in a judicial act and was acting within his jurisdiction in doing so. Accordingly, Judge Danielson is absolutely immune from liability, and Plaintiff may not maintain an action for monetary damages against him. 28 U.S.C. § 1915(e)(2)(B)(iii).

Prosecutor Stone also is entitled to absolute immunity for his actions in appearing on behalf of Manistee County to defend Plaintiff's motion. The Supreme Court embraces a functional approach in determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*,

522 U.S. 118, 127 (1997); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993); *Grant*, 870 F.2d at 1137. In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role of an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997). Obviously, legally representing the county in court is part of the prosecutor's role as an advocate. Accordingly, the Defendant Stone is entitled to immunity.

### B. Access to the Courts

In his first cause of action, Plaintiff argues that he has been denied access to the courts because Defendants have not provided him sufficient paper and have not made all the copies he deems necessary to being able to file his initial lawsuit. It is well established that prisoners have a constitutional right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The *Bounds* Court noted that, in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's

constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1, 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must assert a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in [an access-to-the-court] complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536

U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

Here, Plaintiff makes no allegations about the content of his underlying action. He therefore has failed to state an essential element of his access-to-the-courts claim.

### C. Retaliation

Plaintiff claims that certain of Defendants' comments and their refusals to provide him with paper and copies are "retaliatory." Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation

is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff's factual allegations fall far short of supporting his conclusory claim of retaliation. First, he does not specify what conduct formed the basis of the alleged retaliation, so the complaint fails to allege that he was engaged in protected conduct. Second, he alleges no action taken by any Defendant that was materially adverse. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). The mere fact that Defendants denied his requests for copies or that Campbell made a simple comment to Plaintiff is not the sort of action that would deter an ordinary person from exercising his rights. *See Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (verbal harassment does not constitute adverse action); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir.1987) (an inmate has no right to be free from verbal abuse); *Thaddeus-X*, 175 F.3d at 398 (minor threats do not rise to the level of a constitutional violation). Plaintiff's allegations of retaliation therefore fail to state a claim.

### D. Fourteenth Amendment

Plaintiff claims that Defendant Campbell's denial of his request for copies violated the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Petitioner does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, Plaintiff does not have a fundamental right to photocopies under the Constitution.

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff makes no allegations that he was treated differently than any other similarly situated prisoner.  Indeed, Plaintiff does no more than make the conclusory legal statement that he was denied equal protection.  As the Court previously has discussed, a plaintiff's allegations must include more than labels and conclusions.  *Twombley*, 127 S. Ct. at 1965.  The complaint therefore contains insufficient "facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   December 1, 2008              /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       UNITED STATES DISTRICT JUDGE